# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**HODAN DERWISH,**

      **Plaintiff,**

  v.

**DEPUTY CHIEF OF MISSION, U.S. EMBASSY IN DJIBOUTI, et al.,**

      **Defendants.**

Case No. 1:24-cv-709

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

Plaintiff Hodan Derwish and her husband Mohamed Youssouf Ahmed planned to spend their lives together in the United States. But that plan is taking longer to materialize than they'd hoped, as Ahmed has yet to obtain a visa. Derwish says that's due to the government's unreasonable delay in making a final decision on Ahmed's visa application. So she sued under the Administrative Procedure Act (APA), 5 U.S.C. §§ 555(b) and 706(1), and the Mandamus Act, 28 U.S.C. § 1361, and asks the Court to require Defendants to process her husband's visa application "as soon as reasonably possible." (Compl., Doc. 1, #6–8). Defendants Deputy Chief of Mission Christopher Snipes and Secretary of State Marco Rubio[1] move to dismiss Derwish's Complaint under either Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction or Rule 12(b)(6) for failure to state a claim. (Doc. 9). For the reasons

---

[1] Antony Blinken was the acting Secretary of State at the time Derwish filed suit, which explains why her Complaint names him. (Doc. 1, #1). But now Marco Rubio holds that office. And under Federal Rule of Civil Procedure 25(d), when a public officer "ceases to hold office while [an] action is pending … [t]he office's successor is automatically substituted as a party."

below, the Court agrees with Defendants on the former and thus **GRANTS** Defendants' Motion to Dismiss. Accordingly, the Court **DISMISSES** Derwish's Complaint (Doc. 1) **WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

## BACKGROUND[2]

Derwish married Ahmed in 2020. (Doc. 1, #2). Naturally, the couple wishes to reside together. But Derwish currently lives in Ohio, while Ahmed, it seems, is in Djibouti (a country in East Africa).[3] (*Id.* at #4–5). In the hopes of having her husband join her in the United States, Derwish (who is a United States citizen) filed a visa petition with the United States Citizenship and Immigration Services (USCIS) for Ahmed (who is not) in May 2022. (*Id.*). USCIS approved that visa petition in February 2023. (*Id.* at #5). Because Ahmed was in Djibouti, the next step was for a consular officer at the United States Embassy in Djibouti to interview him. (*Id.*). That occurred on February 4, 2024. (*Id.*). And Derwish says her husband answered all the consular officer's questions truthfully and that he provided all the requested information. Nonetheless, a short time after the interview, the couple received some disappointing news: the Embassy had "refused" Ahmed's application and, as Derwish characterizes it, "placed" Ahmed's case in "administrative processing [under] the Immigration and Nationality Act [] § 221(g)." (*Id.*).

---

[2] In providing the factual background, the Court recounts the allegations from Derwish's Complaint with the caveat that, at this stage, they remain just that—allegations.

[3] The Complaint doesn't allege where Ahmed is residing, but it does allege that he "was interviewed by the U.S. Embassy in Djibouti," (Doc. 1, #5), which at least suggests that he's residing there.

2

About a year later, Derwish emailed the Embassy, inquiring about the status of Ahmed's case. (*Id.*). The Embassy allegedly informed Derwish that Ahmed's case was "still refused" under § 221(g) "for necessary administrative processing to verify [Ahmed's] qualifications for [a] visa." (*Id.* at #5–6). Since then, Derwish and Ahmed have continued following up with the Embassy, but they haven't received any "meaningful responses." (*Id.* at #6).

Because Ahmed has yet to obtain a visa, and is therefore unable to enter the United States, the couple is experiencing increasing "emotional, personal, and financial hardship." (*Id.* at #2–4). So, given the lack of response from the Embassy, Derwish decided to see if she could jump start things. To that end, she filed this lawsuit, alleging that the government has unreasonably delayed adjudicating Ahmed's visa application in violation of (1) APA § 555(b), (2) various immigration-related statutes and regulations, and (3) her substantive and due process rights under the Fifth Amendment. (*Id.* at #6–8). Based on that, she asks the Court either to compel Defendants to adjudicate Ahmed's visa application under APA § 706(1) or to mandate the same under the Mandamus Act. (*Id.*).

Defendants now move to dismiss Derwish's Complaint under Rules 12(b)(1) and 12(b)(6). (Doc. 9). As to the former, Defendants argue that because a consular officer has already "refused" Ahmed's application, Defendants have fulfilled the sole mandatory, non-discretionary statutory or regulatory duty they owe Derwish. (*Id.* at #57–59). And with no such remaining duty to act, Defendants say, the Court lacks subject-matter jurisdiction to compel agency action. (*Id.*). On the 12(b)(6) front,

3

Defendants raise three reasons why Derwish's Complaint fails to state a claim: (1) the doctrine of consular non-reviewability bars judicial review, (2) Derwish has no constitutionally protected right to have her spouse living in the United States, and (3) Derwish has failed to state a plausible claim that the consular officer unreasonably delayed. (*Id.* at #59–73).

Derwish responded, (Doc. 10), and Defendants replied, (Doc. 11). So the motion is ripe for review.

## LEGAL STANDARD

As noted above, Defendants move to dismiss both for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Because jurisdictional issues precede consideration of the merits, and because the Court concludes that the former are dispositive here, the Court addresses only jurisdiction in this Opinion and Order.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). And when a defendant challenges the Court's jurisdiction under Rule 12(b)(1), "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Further, a dismissal under Rule 12(b)(1) is typically without prejudice because it "allows for the possibility of repleading the action to bring it within the subject matter jurisdiction of some court." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

A challenge to the court's subject-matter jurisdiction under Rule 12(b)(1) can be either facial or factual. *Id.* "A *facial* attack … merely questions the sufficiency of the pleading." *Id.* So in reviewing a motion that mounts a facial challenge to the Court's subject-matter jurisdiction, "the district court must accept all material allegations of the complaint as true." *Phillips v. Trump*, No. 18-6341, 2019 WL 7372704, at *1 (6th Cir. Nov. 20, 2019) (citation and quotation marks omitted).

But a *factual* attack is different. There, "no presumptive truthfulness applies to the factual allegations." *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. And when reviewing a factual attack on jurisdiction, courts may consider sources outside the pleadings. *Id.* ("[A] trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("[T]he court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits.").

## LAW AND ANALYSIS

To reach the merits of Derwish's case, the Court must have subject-matter jurisdiction. Ultimately, though, the Court concludes that it doesn't. So rather than proceeding to the merits, the Court dismisses this action without prejudice. But before turning to the threshold jurisdictional issue, a little background on the relevant statutory and regulatory scheme is in order.

Before a noncitizen may lawfully enter the United States, he or she must obtain a visa. 8 U.S.C. § 1181(a). For the spouse of a lawful permanent resident, the

5

Immigration and Nationality Act (the Act) "creates a special visa-application process." *Baaghil v. Miller*, 1 F.4th 427, 430 (6th Cir. 2021) (citing 8 U.S.C. § 1153(a)(2)(A)). And that process proceeds in essentially two steps. It starts with the lawful permanent resident (here, Derwish) filing a "Form I-130" identifying the noncitizen spouse. 8 U.S.C. § 1154(a)(1)(A); 8 C.F.R. § 204.1(a)(1). USCIS reviews that form and "determines the relative's eligibility for a visa." *Baaghil*, 1 F.4th at 430; 8 C.F.R. § 204.1. If USCIS approves the Form I-130, that initiates step two: the non-citizen spouse (here, Ahmed) must apply for a visa from the United States Department of State. 8 U.S.C. § 1201(a). That requires the spouse to both provide supporting documentation and appear for an in-person interview with a consular officer at the relevant United States Embassy. *Id.* § 1202.

A consular officer handling a visa application likewise has a few responsibilities of his or her own. After reviewing the visa application, the officer must "issue the visa [or] refuse the visa" under § 212(a) or § 221(g) of the Act. 22 C.F.R. § 42.81(a); *see also* 8 U.S.C. § 1201(a). On the refusal front, an officer must not issue a visa if, based on the application materials, "it appears … that such alien is ineligible to receive" one. 8 U.S.C. § 1201(g). Nor can the officer issue a visa if he or she "knows or has reason to believe" the applicant is ineligible for one. *Id.* And the onus to prove eligibility falls on the non-citizen applicant. 8 U.S.C. § 1361. So if the applicant "fails to establish to the satisfaction of the consular officer that he is eligible," then "no visa … shall be issued." *Id.*

6

If a consular officer refuses a visa application, though, the officer has an additional option. Although not set forth in statute, if the consular officer determines that additional information from other sources may result in a future decision to grant the visa, then State Department procedures allow the consular officer to find that additional "administrative processing" is warranted. The State Department website describes it this way:

> [I]n accordance with Department procedures, a consular officer may determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa. In such cases, refused visa applications warrant further administrative processing.

*Administrative Processing Information*, U.S. Dep't of State, https://perma.cc/2M2G-NJDS. Then, once the officer has obtained the additional information, the officer "might conclude that an applicant is now qualified for the visa," or conversely, "may conclude that the applicant remains ineligible." *Id.* But the website specifically notes that "the duration of the administrative processing will vary based on the individual circumstances of each case." *Id.*

With that background in mind, turn to the dispute at hand. Derwish, recall, wants the Court to compel Defendants to process Ahmed's visa application under the APA or Mandamus Act. But Defendants argue that the Court lacks subject-matter jurisdiction to entertain Derwish's claims.

Congress has granted district courts original jurisdiction in "any action in the nature of mandamus" to compel agency action. 28 U.S.C. § 1361. But that power extends only to "extraordinary situations." *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 491 (6th Cir. 2011). The APA, for its part, likewise authorizes courts to

7

"compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But both of these paths—mandamus or the APA—are narrow. In particular, a plaintiff seeking to take advantage of either must make a prerequisite showing: the Court "may order [an] agenc[y] to act only where the agency fails to carry out a mandatory, nondiscretionary duty." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004). Moreover, that showing is a *jurisdictional* prerequisite. In other words, absent a mandatory, nondiscretionary duty, the Court lacks any authority even to hear the case. *Carson*, 633 F.3d at 491. And that is true of both mandamus and the APA: "When a p[laintiff] seeks both mandamus relief and relief under the APA, courts apply the same principles and standards [] to determine jurisdiction." *Huron Mountain Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390, 393 (6th Cir. 2013) (quotation omitted). Said differently, the defendant agency must have "a clear duty to act" before the Court even has jurisdiction to consider compelling action. *Carson*, 633 F.3d at 491.

That "clear duty" requirement underlies the dispute here. As a starting point, all seem to agree that the government has a duty to act on a visa application, either by issuing a visa or refusing it. (Doc. 9, #57; Doc. 10, #88). The question, though, is where that duty ends. Does it end immediately after the government either issues a visa or refuses an application, as Defendants contend? (Doc. 11, #106–07). Or does the government's duty extend further, requiring timely re-adjudication of an already-refused application if the consular officer has determined that the application warrants "administrative processing," as Derwish argues? (Doc. 10, #88–91). While

8

case law does not definitively answer the question, based on the statute's plain language, the Defendants have the better argument.

Start with the case law. The Sixth Circuit has yet to expressly decide whether the government, after officially refusing a visa application but finding that additional administrative processing is warranted, has a duty to re-adjudicate the application within a reasonable time. Meanwhile, a smattering of district courts within the Circuit have reached differing conclusions on that issue. *Compare, e.g.*, *Yared v. Nepal*, No. 1:24-cv-2114, 2025 WL 1067738, at *4–5 (N.D. Ohio Apr. 9, 2025) (concluding that "no law require[s] [the government] to take some further discrete, non-discretionary action" on an already-refused visa that's been placed in administrative processing), *with Gonzalez v. Offutt*, No. 1:23-cv-547, 2024 WL 2847962, at *3–4 (S.D. Ohio June 5, 2024) (finding that "refusal of a visa application under § 122(g) is not a final decision when that application is later placed in administrative processing"). Moreover, that split finds echoes in courts across the country. *Compare, e.g.*, *Berenjian v. Blinken*, No. 1:24-cv-663, 2024 WL 3732451, at *3 (E.D. Va. Aug. 8, 2024) ("Plaintiff cannot show that any delay in considering the applicant's supplemental information—after it refused their applications—is a delay of a discrete agency action the government is required to take." (emphasis omitted)), *with Maadarani v. Mayorkas*, No. 2:24-cv-1325, 2024 WL 4674703, at *8 (E.D. Cal. Oct. 31, 2024) (holding that initial refusal of a visa application plus placement in administrative processing "does not dispense with [the statutory] duty because there has been no final adjudication").

9

But, while the case law may be unsettled, the relevant statutory and regulatory language strikes the Court as pointing clearly in one direction. Under 22 C.F.R. § 42.81(a), after a non-citizen relative makes a proper visa application, a consular officer "must issue the visa [or] refuse the visa" under § 212(a) or § 221(g) of the Act. And an officer must refuse a visa when, among other things, "it appears" that the non-citizen in ineligible. 8 U.S.C. § 1201(g). That is, the officer has two options— issue or refuse. Nothing in the regulation or statute suggests that after refusing a visa application a consular officer must take any further steps. True, the relevant text certainly does not *prohibit* the consular officer from taking additional steps, such as obtaining additional information that may lead the officer to change his or her mind. But the key point for present purposes is that neither statute nor regulation *requires* the consular officer to do so. And the only things that count for purposes of mandamus (or an injunction under the APA) are mandatory, non-discretionary duties—i.e., requirements.

What's more, while the Sixth Circuit hasn't addressed head on whether undertaking such additional administrative processing gives rise to a new mandatory duty, it has at least hinted that the answer is no. Specifically, it has observed that refusing a visa application "fully discharge[s]" the government's "clear duty to adjudicate [a] visa application." *Hussein v. Beecroft*, 782 F. App'x 437, 441–42 (6th Cir. 2019) (citing 8 U.S.C. § 1201(g)). So when the consular officer responsible for Ahmed's case refused the visa application, (Doc. 1, #5; *see also* Doc. 10-1, #104), which everyone here agrees the officer did, that fully discharged the government's

10

mandatory, nondiscretionary duty to adjudicate Ahmed's case. Therefore, nothing remains for this Court to compel.

Derwish disagrees. She argues that duty extends further, requiring the government to adjudicate Ahmed's application "through finality"—meaning through administrative processing—within a reasonable time. (Doc. 10, #83). The problem for Derwish, though, is that the statutes and regulations simply don't say what she would like them to. Much like the plaintiff in another recent case, Derwish "has not pointed to any statute or regulation that requires any action concerning a visa in 'administrative processing,'" nor has she "pointed to any law or regulation that concerns visas in 'administrative processing' at all." *Yared,* 2025 WL 1067738, at *4.

Start with the immigration-related statutes Derwish highlights: 8 U.S.C. §§ 1202(b) and 1153(a). Under § 1202(b), "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." At most, that language imposes a mandatory duty on the government to adjudicate visa applications by either issuing a visa or refusing the application. *See Iqbal v. Blinken*, No. 2:23-cv-1299, 2023 WL 7418353, at *6–7 (E.D. Cal. Nov. 9, 2023). Indeed, the language may not even go that far—the statute could be understood as merely explaining who it is (i.e., consular officers) that must review and adjudicate visa applications. *Ali v. United States Dep't of State*, 676 F. Supp. 3d 460, 469–70 (E.D.N.C. 2023). But even assuming (without deciding) the former, more duty-laden reading, the statutory text in no way says that the duty extends beyond issuing or refusing a visa. The statute does not mention an "initial" refusal followed by a "final" refusal, or otherwise discuss "'temporarily'

11

refusing a visa while seeking supplemental evidence." *See Yared*, 2025 WL 1067738, at *4. It simply says an officer must review and adjudicate an application. 8 U.S.C. § 1202(b). And that happened here—the consular officer refused the application.

Derwish's reference to § 1153(a) is even less persuasive. That statute merely says visas "shall be allotted" to certain relatives of qualified immigrants. 8 U.S.C. § 1153(a). By its plain language, then, that statute does nothing more than "identif[y] the statutory visa allocation for different family-sponsored visas." *Ishaq v. Schofer*, No. 8:24-cv-207, 2024 WL 3729107, at *5 (D. Md. Aug. 8, 2024).

Turn next to the immigration-related regulations Derwish underscores: 22 C.F.R. §§ 42.81(a), 42.21(a), and 41.106. The Court can make short work of § 42.81(a). As already explained, that regulation requires a consular officer to either "issue" or "refuse" (or in other inapplicable circumstances, "discontinue granting") a visa. Nowhere does it impose a mandatory duty to further adjudicate an already-refused visa application. Nor does the second regulation she cites—§ 42.21(a). That regulation provides that a United States citizen's "immediate relative shall be documented as such." 22 C.F.R. § 42.21(a). The Court cannot make out how that could be understood as imposing a mandatory *adjudicatory* duty relating to the visa application; at most, it levies a documentary duty. That leaves § 41.106, under which "[c]onsular officers must ensure that the Form DS-160 or … Form DS-156 is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106. Sure, the "promptly processed" part sounds good, but the argument itself falls flat. For one, the Court isn't sure that regulation even

applies here given that Derwish completed a Form I-130 for Ahmed, not a Form DS-160 or DS-156. (Doc. 1, #5). For another, the regulation says officers must promptly process forms "*in accordance with*" other regulations. 22 C.F.R. § 41.106 (emphasis added). And one of those other regulations requires consular officers to grant or refuse a visa under § 221g of the Act. *Id.* § 42.81(a). Again, not to belabor the point, that already happened here. And beyond that, just like the other statutes and regulations Derwish emphasizes, § 41.106 doesn't even hint at adjudication beyond an initial issuance or refusal. The Court therefore concludes that none of the immigration-related statues and regulations to which Derwish points impose the duty she claims they do.

In one final attempt to prove that Defendants have a mandatory, nondiscretionary duty to re-adjudicate Ahmed's already-once-refused visa application, Derwish offers up 5 U.S.C. § 555(b). But as other courts have explained, and this Court agrees, that provision does not "place a clear, non-discretionary duty on [a] consular officer to re-adjudicate [an] already-refused application." *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3 (D.C. Cir. July 24, 2024) (cleaned up); *see also, e.g.*, *Ishaq*, 2024 WL 3729107, at *5. The provision says agencies "shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties … within a reasonable time." 5 U.S.C. § 555(b). That "general directive" is a "far cry from the discrete agency action that courts require when issuing an order compelling agency action unlawfully withheld or unreasonably

13

delayed." *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F. Supp. 2d 1, 9 (D.D.C. 2008) (cleaned up). So that statute doesn't help Derwish either.

In short, none of the statutory or regulatory provisions Derwish offers create a clear, mandatory, nondiscretionary duty that requires the government to adjudicate a visa application that a consular officer has already refused, even if the consular officer has concluded that additional administrative possessing is warranted. And the cases Derwish cites do not persuade the Court otherwise.[4] The consular officer assigned to Ahmed's case refused Ahmed's visa application. And despite Derwish's arguments to the contrary, that's all federal law requires. Absent a federal law that imposes a duty beyond issuance or refusal of a visa, the Court lacks jurisdiction to compel agency action here—whether through mandamus or by way of the APA.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss (Doc. 9). The Court thus **DISMISSES** Derwish's Complaint (Doc. 1) **WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

---

[4] Derwish relies on, for example, *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry*, 168 F. Supp. 3d 268 (D.D.C. 2016), to support her claim that placement of a visa application in administrative processing is a "temporary measure" that renders the government's refusal of Ahmed's visa application non-final. (Doc. 1, #5; Doc. 10, #83). That court, however, leaned heavily on the government's "actual practices and statements" to conclude that the government has a duty to further adjudicate an already-refused visa application that's been placed in administrative processing. *Id.* at 284–89. But this Court is not persuaded that the government's practices and statements are what creates a mandatory, nondiscretionary duty to act; federal laws do. And because, as explained, Derwish has pointed to no federal laws that impose such a duty, the Court declines to recognize one here.

14

**SO ORDERED.**

<u>August 15, 2025</u>
**DATE**

_____
**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**